Tagged Opinion



**ORDERED in the Southern District of Florida on February 17, 2011.**

Robert A. Mark, Judge
**United States Bankruptcy Court**

_____

Tagged Opinion

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 10-16511-RAM |
| | Chapter 13 |
| KARIN S. GERARDIN, | |
|       Debtor. | |
| _____/ | |
| IN RE: | CASE NO. 10-13622-BKC-RAM |
| | Chapter 13 |
| JORGE LUIS HERNANDEZ, | |
|       Debtor. | |
| _____/ | |
| IN RE: | CASE NO. 10-14885-BKC-RAM |
| | Chapter 13 |
| BERND KERN, | |
|       Debtor. | |
| _____/ | |

| | |
|---|---|
| IN RE: | CASE NO. 09-33875-BKC-RAM |
| | Chapter 13 |
| SAMUEL MATOS and NILDA E. MATOS, | |
| Debtors. | |
| _____/ | |
| IN RE: | CASE NO. 10-11923-BKC-LMI |
| | Chapter 13 |
| PABLITA TAMPUS EHLERS, | |
| Debtor. | |
| _____/ | |
| IN RE: | CASE NO. 10-12684-BKC-LMI |
| | Chapter 13 |
| ADRIENNE B. CAPLAN-GAWLIKOWSKI, | |
| Debtor. | |
| _____/ | |
| IN RE: | CASE NO. 09-36665-BKC-AJC |
| | Chapter 13 |
| DONNA ELIZABETH WONG, | |
| Debtor. | |
| _____/ | |

**MEMORANDUM OPINION ON ABILITY OF A CHAPTER 13 DEBTOR
TO STRIP A LIEN WHEN THE CHAPTER 13 DEBTOR
IS INELIGIBLE FOR A DISCHARGE**

A variety of procedural motions are pending in these cases, all of which require resolution of the same threshold legal issue – whether a chapter 13 debtor who is ineligible to receive a chapter 13 discharge may, nonetheless, strip off the lien of a wholly unsecured mortgage in a chapter 13 plan. The resolution of this issue rests on the applicability and

interpretation of 11 U.S.C. § 506 and 11 U.S.C. § 1325(a)(5)(B). For the reasons set forth below, the Court[1] answers the question in the negative.

## PROCEDURAL BACKGROUND

Seven debtors filed Chapter 13 bankruptcy cases soon after receiving their discharge in a prior Chapter 7 case. There is no dispute that none of the debtors (collectively the "Debtors") is eligible for a Chapter 13 discharge. The Debtor seeks to strip off a junior lien and motions to value have been filed in each case.[2] In three of the cases, orders granting the motions to value were entered and motions to vacate those orders are pending. The specific motions at issue are the following:

    A.    <u>Karin S. Gerardin, Case No. 10-16511-RAM</u>

        1.    Debtor's Motion to Value and Determine Secured Status of Lien on Real Property [DE #17].

    B.    <u>Jorge Luis Hernandez, Case No. 10-13622-RAM</u>

        1.    Debtor's Motion to Value and Determine Secured Status of Lien on Real Property [DE #12].

    C.    <u>Bernd Kern, Case No. 10-14885-RAM</u>

        1.    Debtor's Motion to Value and Determine Secured Status of Lien on Real Property [DE #12].

    D.    <u>Samuel Matos and Nilda Esther Matos, Case No. 09-33875-RAM</u>

        1.    Debtors' Motion to Value Collateral in Plan [DE #27].
        2.    Trustee's Motion for Rehearing of Order Granting Motion to Value and Certificate of Service of Notice of Hearing [DE #43].

---

[1] As used in this Opinion, "Court" refers to the three judges of the Miami division of this Court who are signing this Opinion. Because these cases are not administratively consolidated, this Opinion will be entered in each case bearing the signature of only the judge before whom the case is pending.

[2] One debtor, Donna Wong, Case No. 09-36665-BKC-AJC, settled her dispute with her lender which settlement was announced at the beginning of oral argument. The six remaining debtors are all represented by the same attorney.

    E.      Pablita Tampus Ehlers, Case No. 10-11923-LMI

1. Debtor's Motion to Value and Determine Secured Status of Lien on Real Property [DE #31].
2. Debtor's Motion to Value and Determine Secured Status of Lien on Real Property [DE #33].
3. Wells Fargo Bank, N.A.'s Amended Motion to Vacate or Reconsider Debtor's Motion to Strip Lien of Wells Fargo, Object to Claim #1-1 and with Respect to Confirmation Motion to Strike Motion Filed by Debtor(s) to Determine Secured Status of Wells Fargo Bank, N.A. Regarding Real Property [DE #50].

    F.      Adrienne Beth Caplan-Gawlikowski, Case No. 10-12684-LMI

1. Debtor's Motion to Value and Determine Secured Status of Lien on Real Property [DE #16].

    G.      Donna Elizabeth Wong, Case No. 09-36665-AJC

1. Debtor's Motion to Value Collateral in Plan [DE #24].
2. Capital One, N.A.'s Motion to Set Aside Order Granting Motion to Value and Determine Secured Status of Lien on Real Property (Document No. 41) and for Reconsideration of Motion to Value Collateral (Document No. 24) [DE#46].

(collectively the "Motions").

Because the threshold legal issue in each of the seven cases is the same, the three judges before whom the seven cases are pending determined it would be efficient and helpful to conduct a joint hearing on all the Motions. Accordingly, the Court entered a joint scheduling order, setting all the Motions for hearing on August 24, 2010.

Having considered the Motions and all other relevant pleadings, including various memoranda of law, and having considered the arguments presented at the joint hearing, the Court has determined that a debtor who is not qualified to receive a discharge under 11 U.S.C. § 1328 may not use 11 U.S.C. § 506 to value an allowed secured claim and thereby remove a lien from the debtor's property in a chapter 13 plan.

## I. LIEN STRIPPING AND BANKRUPTCY

The Bankruptcy Code recognizes that obligations secured by collateral may be bifurcated into an unsecured claim and a secured claim depending on the value of the collateral.

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). Moreover, with some exceptions not applicable here, "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ." 11 U.S.C. § 506(d). Thus, in bankruptcy cases a debtor or trustee may seek to value a creditor's collateral for the purpose of reducing that creditor's secured claim to the value of its collateral, while the remaining allowed claim is treated as an unsecured claim. When the secured claim is partially reduced this is known as a "strip down". When the lien is completely removed because the claim is not secured at all (usually a second or third mortgage on real estate), this is known as a "strip off".

There are limitations on a debtor's ability to strip down or strip off a lien. First, a chapter 7 debtor may not use section 506 to strip a lien, *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992) ("[T]he creditor's lien stays with the real property until the foreclosure."). In *Dewsnup*, the Supreme Court held that § 506(d) did not mean that a lien would be modified based solely upon a § 506(a) valuation. Instead, it held that § 506(d) acts to avoid liens only if the underlying claim is disallowed. The Court rejected an interpretation of § 506(d) that would depart from the well-established pre-Code rule that liens pass through bankruptcy unaffected. 502 U.S. at 417.

*Dewsnup* was a strip down case, but this Court agrees with the majority of courts, including the only two circuit courts to address the issue, which have interpreted *Dewsnup* as

5

also prohibiting strip offs in a Chapter 7 case. *See, e.g., Talbert v. City Mortgage Servs. (In re Talbert)*, 344 F.3d 555, 562 (6th Cir. 2003); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 783 (4th Cir. 2001); *In re Laskin*, 222 B.R. 872, 876 (9th Cir. BAP 1998); *In re Hoffman*, 433 B.R. 437, 440 (Bankr. M.D. Fla. 2010). In *In re Hoffman*, the court recognized that public policy concerns may favor modification of the rights of secured creditors in economic crises such as the present one, where a significant number of homes are worth less than the senior liens encumbering them (let alone the junior liens). Nonetheless, the court held that it "cannot deviate from the Supreme Court's binding interpretation of § 506(d) in *Dewsnup*. Congress has had many years to overturn *Dewsnup* by legislative action but has enacted no statutory change. Until it does, *Dewsnup* remains the law of the land." *In re Hoffman*, 433 B.R. at 441.

*Dewsnup* does not preclude lien stripping in chapter 13 cases. However, a chapter 13 debtor may not <u>strip down</u> a lien secured solely by a debtor's principal residence. 11 U.S.C. § 1322(b)(2); *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993). Nonetheless, in the Eleventh Circuit, as well as several other circuits,[3] a debtor may <u>strip off</u> a lien even if it is secured solely by a debtor's principal residence, if the creditor's claim is completely unsecured because the property is worth less than the senior liens. *Tanner v. FirstPlus Financial, Inc. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000).

In *Tanner*, the Eleventh Circuit held that, notwithstanding *Nobelman*, the protections of 11 U.S.C. § 1322(b)(2) afforded to holders of secured claims "secured only by a security interest in real property that is the debtor's principal residence," do not apply to wholly unsecured homestead mortgages. "[O]nly the rights secured by some remaining equity will be protected

---

[3] *See, e.g., Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *In re Lane*, 280 F.3d 663, 667-69 (6th Cir. 2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 126 (2d Cir. 2001); *In re Bartee*, 212 F.3d 277, 295 (5th Cir. 2000); *McDonald v. Master Financial, Inc. (In re McDonald)*, 205 F.3d 606, 611 (3d Cir. 2000).

from modification." 217 F.3d at 1360.  Because the Debtors here are in chapter 13, they argue that *Tanner* supports their efforts to value collateral and strip off the junior liens.

However, *Tanner*[4] is inapposite.  The Eleventh Circuit focused its attention on the interplay between section 506(a) and section 1322(b)(2) in light of the *Nobelman* holding.  It did not consider how section 1325(a) and a prior bankruptcy discharge might impact the treatment of a lien.

As discussed later, there are several decisions addressing the precise issue here, some allowing a post-discharge strip off, others finding it impermissible.  Before reviewing these decisions, the Court will discuss the nature of the creditors' claims that survived the chapter 7 discharge and show why a § 506(a) valuation must be implemented in conjunction with another provision of the Bankruptcy Code to accomplish the strip down or strip off of a lien.  In the cases before the Court, § 1325 is the applicable section, and as discussed in section IV *infra*, lien stripping may not be accomplished under § 1325 when a debtor is ineligible to receive a discharge.

## II.   THE CREDITORS HAVE AN ALLOWED SECURED CLAIM

To analyze the Debtors' ability to strip a lien in a chapter 13 case filed after the Debtors discharged their personal liability for the obligation secured by the lien in prior chapter 7 cases, the Court must first determine the nature of the claim that survived discharge.  In *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the Supreme Court ruled that a creditor with an obligation secured by a lien on a debtor's property, but which creditor has no *in personam* claim against a debtor due to a prior bankruptcy discharge, nonetheless has a claim against a debtor in a

---

[4] The Court notes that only a month after *Tanner* was decided, the Eleventh Circuit questioned its own holding in *Tanner* but was compelled to follow its own, albeit recent, precedent.  *Am. Gen. Fin., Inc. v. Dickerson* (*In re Dickerson*), 222 F.3d 924, 926 (11th Cir. 2000).

7

subsequent chapter 13 case. As explained in more detail below, the Court interprets that ruling to mean that the claim that exists after the Debtors' chapter 7 discharge is a secured claim.

In *Johnson*, a chapter 13 debtor sought to include in his chapter 13 plan payment of a bank's mortgage even though the debtor's personal obligation to the bank was discharged in the debtor's chapter 7 bankruptcy case. The Supreme Court ruled "a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code." 501 U.S. at 85. Accordingly, the debtor was permitted to "treat" the claim in his chapter 13 plan.

The creditors in these cases similarly have claims against the Debtors' estates, and this Court finds that those claims are allowed secured claims. The claims are secured because the creditors' mortgage liens survived the Debtors' chapter 7 discharges. 11 U.S.C. § 522(c)(2); *Johnson*, 501 U.S. at 83 ("[A] creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."); *Dewsnup v. Timm*, 502 U.S. at 417 ("the creditor's lien stays with the real property until the foreclosure"). The claims are allowed because there is no basis for disallowing the claims under 11 U.S.C. § 502. Debtors' counsel argued the claims should be disallowed under 11 U.S.C. § 502(b)(1) because they are "unenforceable against the debtor . . . under . . . applicable law." That selective reading of § 502(b)(1) excludes the portion of the statute that is of most import here, namely that a claim is disallowed if it is "unenforceable against the debtor *and property of the debtor*." 11 U.S.C. § 502(b)(1) (emphasis added). Under Florida law, the creditors' mortgage liens are enforceable against the Debtors' property.

Thus, on the petition date, each creditor had an allowed secured claim against a Debtor's bankruptcy estate in the form of a mortgage lien encumbering the Debtor's property. To modify

the creditors' mortgage liens, the Debtors must convince the Court that some section of the Bankruptcy Code permits modification of an otherwise enforceable security interest.

### III.    THE LIENS MAY NOT BE STRIPPED UNDER § 506(d)

When asked by this Court what kind of claim a lender would have in a chapter 13 bankruptcy following a chapter 7 discharge, Debtors' counsel conceded that the claim would be a secured claim.  Nonetheless, Debtors' counsel argued that because, in each case, the amount of the claim of a senior lien-holder exceeded the value of the collateral encumbered by the senior lien, junior liens on the same collateral could be stripped pursuant to 11 U.S.C. § 506, the result of which is each junior lien-holder would have only an unsecured claim.  While the Court recognizes that, under 11 U.S.C. § 506, a valuation may conclusively establish that, in these cases, there is no equity securing junior liens, the Court rejects the notion that those junior liens are modified under § 506(d) based on a § 506(a) valuation.  Rather, because there is no basis for disallowing the underlying claims in these cases, the Court holds that § 506(d) is inapplicable.

A lien <u>cannot</u> be modified under § 506(d) if the claim that it secures is an allowed claim. "Section 506(d) prescribes a number of special rules governing the avoidance of liens that secure <u>disallowed</u> claims." 4 Collier on Bankruptcy ¶ 506.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (emphasis added).

> Under a bankruptcy specific rule of statutory construction, § 103(a), § 506(d) must apply in all bankruptcy cases if it is to apply in any. . . . If lien strips were to be authorized by § 506(d) alone, that sub-section would apply in equal force in Chapter 7 and reorganization cases.  Allowing lien strips in Chapter 7 cases would run afoul of *Dewsnup*.

*In re Hill*, 440 B.R. 176, 181 (Bankr. S.D. Cal. 2010).

Thus, as several courts have found, the Supreme Court's decision in *Dewsnup* instructs that § 506 alone does not operate to void a lien securing an allowed claim. *See, e.g., In re Laskin*,

222 B.R. 872, 876 (9th Cir. BAP 1998) ("*Dewsnup* teaches that, unless and until there is a claims allowance process, there is no predicate for voiding a lien under § 506(d)."); *Harmon v. United States*, 101 F.3d 574, 581 (8th Cir. 1996) (*Dewsnup* "holds only that § 506(d) does not itself provide the authority for a debtor to strip down liens"); *In re McNeal*, No. A09-78173-PWB, 2010 WL 1753376, at *3 (Bankr. N.D. Ga. April 12, 2010) ("§ 506 provides no independent power for a debtor to avoid a lien"). If a claim is allowed, § 506(a) must be used in connection with another statute, such as § 722, § 1129, § 1125, or, as here, § 1325. *In re Virello,* 236 B.R. 199, 204 (Bankr. D.S.C. 1999).

In sum, § 506(d) is not the miracle lien remover the Debtors want it to be. It is not self-executing. If § 506 alone could strip a lien securing an allowed claim, it would be applicable in Chapter 7. Under *Dewsnup*, that is not the law. A debtor valuing collateral under § 506(a) must apply that valuation in conjunction with another section of the Bankruptcy Code. Here, that section is § 1325, and as discussed next, these Debtors cannot accomplish a strip down under that section.

## IV.    THE LIENS MAY NOT BE STRIPPED UNDER § 1325 BECAUSE THE DEBTORS ARE NOT ELIGIBLE TO RECEIVE A DISCHARGE

For debtors to strip off a lien in a chapter 13 case, their proposed treatment of the secured claim must comply with 11 U.S.C. §1325(a)(5). *Am. Gen. Fin., Inc. v. Paschen (In re Paschen)*, 296 F.3d 1203, 1205-06 (11th Cir. 2002) ("The manner in which secured claims may be modified in an acceptable Chapter 13 plan is governed by § 1325(a)(5)."). Section 1325(a)(5) sets forth the following alternative required treatments of a secured claim in a chapter 13 plan -

> (5) with respect to each allowed secured claim provided for by the plan –
>   (A) the holder of such claim has accepted the plan;
>   (B)(i) the plan provides that –
>       (I) the holder of such claim retain the lien secured by such claim until the earlier of –

                (aa) the payment of the underlying debt determined under nonbankrutpcy law; or

                (bb) discharge under section 1328; and

           (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankrutpcy law;

      (ii)   the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

      (iii)   if –

           (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

           (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

      (C) the debtor surrenders the property securing such claim to such holder;

Thus, in the absence of acceptance of the plan by the holder of the secured claim, or surrender of the collateral to the creditors, the plan must provide for payments equal to the allowed amount of the secured claim and that the lien holder retains its lien until "payment of the underlying debt determined under nonbankruptcy law; or . . . discharge under section 1328." 11 U.S.C. § 1325(a)(5).

The Chapter 13 Trustee, and the mortgage holders opposing the Debtors' position, argue that none of the Debtors can satisfy the § 1325(a)(5) requirements because they are not paying the underlying debt in full and they are not eligible to receive a discharge under section 1328.[5]

There is some support for the Debtors' position that a debtor can modify a lien in chapter 13 even if the debtor is ineligible for a discharge under section 1328.[6] In *In re Tran*, 431 B.R.

---

[5] § 1328(f) precludes discharge under Chapter 13 if the debtor received a discharge under Chapter 7 within four years of filing the Chapter 13 case.

[6] There are no published decisions that support the Debtors' argument that the requirements of § 1325 are never triggered because § 506(d) renders the lien void and the claim unsecured. The Debtors' attached to their memorandum a slip opinion entered in the case *Hart v. San Diego Credit Union*, No. 09 CV 1017 JLS (POR) (S.D. Cal. March 1, 2010). That opinion has no precedential value. Moreover, this Court disagrees with the court's ruling which holds that a wholly unsecured lien is not a secured claim and therefore § 1325 is not implicated.

11

230 (Bankr. N.D. Cal. 2010), the bankruptcy court held that a chapter 13 debtor could strip off a wholly unsecured junior lien despite the fact that the debtor was not eligible for discharge under chapter 13.[7]  Central to the analysis in *Tran* was the court's observation that nothing in the statutory language of either 11 U.S.C. § 109 or 11 U.S.C. § 1325 conditioned confirmation of a chapter 13 plan on the debtor's eligibility to get a discharge. *Id.* at 235.  The *Tran* court found it significant that § 1325(a)(5)(B)(i)(II) provides for the lien to be retained if the case is converted or dismissed "without completion of the plan," rather than saying the lien is retained if the case is converted or dismissed.

Focusing on this subsection, however, ignores the specific and directly applicable language in § 1325(a)(5)(B)(i)(I), which provides for liens to be retained until the debt is repaid or the debtor receives a "discharge under section 1328."  Nevertheless, the *Tran* court concluded that the right to lien strip is "conditioned on the debtor's obtaining confirmation of, and performing under, a chapter 13 plan that meets all of the statutory requirements" and that the holder of a lien that is wholly unsecured is not the holder of a secured claim for purposes of 11 U.S.C. §1325(a)(5)(B). *Id.* at 235.  Since *Tran*, several other courts have also held that a debtor's ability to strip off an unsecured lien in a Chapter 13 plan is not conditioned on the debtor's eligibility to receive a discharge.  *See In re Grignon*, No. 10-34196-tmb13, 2010 WL 5067440 (Bankr. D. Or. Dec. 7, 2010); *In re Hill*, 440 B.R. 176 (Bankr. S.D. Cal. 2010); *In re Jazo*, No. 09-16609-JM13, 2010 WL 3947303 (Bankr. S.D. Cal. Sept. 28, 2010).

This Court rejects the analysis of *Tran* and its progeny and agrees with the many other courts which have held that a debtor's inability to receive a discharge in a "Chapter 20" case prevents a debtor from stripping wholly unsecured liens in a Chapter 13 plan as the actual strip

---

[7] The *Tran* court ultimately refused to confirm the proposed Chapter 13 Plan based on "bad faith" grounds unrelated to the discharge issue.

12

off or lien avoidance only occurs at discharge. *See In re Fenn*, 428 B.R. 494, 500 (Bankr. N.D. Ill. 2010); *In re Mendoza*, No. 09-22395, 2010 WL 736834 (Bankr. D. Colo. Jan. 21, 2010); *In re Winitzky*, No. 1:08-bk-19337-MT, 2009 Bankr. LEXIS 2430 (Bankr. C.D. Cal. May 7, 2009); *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. July 9, 2008); *Blosser v. KLC Fin., Inc.* (*In re Blosser*), Ch. 13 Case No. 07-28223-svk, Adv. No. 08-2353, 2009 WL 1064455 (Bankr. E.D. Wis. Apr. 15, 2009) (following *Jarvis* and noting that "allowing a debtor to file Chapter 7, discharge all dischargeable debts and then immediately file Chapter 13 to strip off a second mortgage lien would not be much different than simply avoiding the mortgage lien in the Chapter 7 itself"). *Accord In re Picht,* 428 B.R. 885, 890 (10th Cir. BAP 2010).

In *Jarvis*, the bankruptcy court held that a debtor's inability to receive a discharge in a Chapter 13 plan precluded the debtor from stripping off a wholly unsecured junior lien. In arriving at this decision, the *Jarvis* court noted:

> A no-discharge Chapter 13 case may certainly be utilized to obtain the protections of the automatic stay for the purpose of proposing a plan to make payments on debts. A no-discharge Chapter 13 case may not, however, result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved through a discharge and where such modification is not binding if a case is dismissed or converted. This Court can find no evidence that, by adding new § 1328(f), Congress intended to expand debtors' remedies in the way that the Debtor here proposes.

*Jarvis*, 390 B.R. at 605-06.

More recently, the *Fenn* court concurred with the *Jarvis* line of reasoning, holding that while a "junior lien can be valued at zero for plan confirmation purposes, . . . the lien cannot be held to be unenforceable and void until the plan ends and the Debtors receive a section 1328 discharge." *Fenn*, 428 B.R. at 500. The *Fenn* court rejected the debtors' argument that a junior

13

mortgage lien should be classified as void under § 506(d) of the Bankruptcy Code simply because the claim is valued at zero. Rather, the court concluded that § 506(a) "determines the amount of funds a plan has to provide for the payment of a secured claim; it does not by its terms or operation disallow claims." *Id.* at 499. The *Fenn* court held that "sections 1322(b)(2), 1325(a)(5) and 506(d) can be reconciled to mean that section 506(d) allows lien avoidance where the claim secured by the lien has been disallowed, and that the specific provisions of § 1325(a)(5) govern the subject of lien retention in the context of chapter 13 plans." *Id.* at 501.

The Court believes the *Fenn* court got it right. In holding that a discharge under Chapter 13 is a necessary condition for stripping off an unsecured lien, the court looked at the express language of § 1325(a)(5) under which the holder of a secured claim retains the lien securing the claim "until the earlier of the payment of the underlying debt determined under nonbankruptcy law or discharge under section 1328 [of the Bankruptcy Code]." *Id.* at 500. 11 U.S.C. § 506(a) allows for the bifurcation of the rights of holders of secured claims, but does not "change the rights immediately allowing the permanent modification of a secured claim to unsecured status, as strip off or avoidance occurs at discharge." *Id.* at 501. Because the debtor is not eligible for a Chapter 13 discharge due to his prior Chapter 7 case, the court observed that the holder of a secured claim retains the lien until the debtor pays off his underlying debt pursuant to nonbankruptcy law. *Id.* at 500. Allowing a strip off of a junior lien without a discharge or payment of the debt would result in a "de facto discharge, a benefit to which the Debtors herein are not entitled." *Id.*

The Debtors alternatively argue that § 1325(a) is satisfied because the Debtors will be paying the underlying debt under applicable nonbankruptcy law. By virtue of the prior chapter 7 discharge, the underlying debt is zero. Therefore, the Debtors are not required to make any

payments.  Alternatively, the underlying debt is limited by the value of the collateral securing the obligation; because the value is zero, the debt is zero.  The Court rejects this creative but illogical construction of the statute and finds that the appropriate interpretation of "underlying debt under nonbankruptcy law" is the amount of the debt outside of the bankruptcy context.  *Accord In re Picht,* 428 B.R. 885; *In re Lilly*, 378 B.R. 232, 236 (Bankr. C.D. Ill. 2007).  The amount of the debt outside the bankruptcy context is the full amount due on the obligation owed to the creditor.  The collectability of that debt, whether from the debtor or the collateral, does not impact the amount of the underlying obligation.  Moreover, as the court held in *In re Lilly*, and as argued by counsel for Wells Fargo at the August 24 hearing, "[w]here a debtor does not receive a discharge . . . any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends." *Id*. at 236.  Thus, if the Court confirms any of these Debtors' plans, once the plan payments are complete, the lien will still be in place, as will the *in rem* obligation.

### V.    POLICY CONSIDERATIONS

Applying § 1325(a)(5) to the Debtors' lien-avoidance attempts in these cases is consistent with the 2005 amendments to the Bankruptcy Code contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Prior to BAPCPA, courts disagreed over whether a secured creditor whose lien was reduced under § 506(a) retained the lien until the end of a plan.  *See Will v. Ford Motor Credit Co. (In re Will)*, 303 B.R. 357, 369 (Bankr. N.D. Ill. 2003).  If, for example, the debtor confirmed a plan that stripped down or stripped off a lien and then converted the case, was the lien still stripped down or stripped off after conversion?

These issues were resolved in BAPCPA by amendments to § 1325(a)(5) and § 348. Amended § 348(f)(1) provides in new subsection (C)(i) as follows:

> the claim of any creditor holding security as of the date of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full as of the date of conversion, notwithstanding any valuation or determination of the amount of an allowed secured claim made for the purposes of the case under chapter 13.

This change makes it clear that lien strips are ineffective upon conversion of a chapter 13 case to chapter 7.

The language added to § 1325(a)(5) in BAPCPA is consistent with and works in tandem with § 348 by clarifying that the lien existing on the filing date remains in place until the debt is discharged or paid in full, § 1325(a)(5)(B)(i)(I), and by specifically providing that the lien on the petition date remains intact if the case is dismissed or converted. 11 U.S.C. § 1325(a)(5)(B)(i)(II). Thus, there is no doubt that Congress fully intended for lien strips, whether strip downs or strip offs, to be dealt with under § 1325(a)(5).

Congressional intent favorable to secured creditors has been acknowledged with deference by the U.S. Supreme Court, which twice has entered decisions plainly designed to protect home lenders. In *Nobelman*, the Supreme Court unanimously held that a § 506(a) valuation that reveals that a claim is undersecured "does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." 508 U.S. at 329; *see also* 508 U.S. at 332 (Stevens, J., concurring) (joining in the Court's opinion because of "legislative history indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market"). A year earlier, in *Dewsnup*, the Supreme Court held firm in its conviction that "[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit

16

of the creditor." 502 U.S. at 417. In an exercise of judicial restraint, it declined, "given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become 'unsecured' for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress." 502 U.S. at 420.

## CONCLUSION

In sum, the Court concludes that a debtor who is ineligible for a chapter 13 discharge may not strip down or strip off a lien. This conclusion follows what the Court believes are the better reasoned decisions on this issue. It is also consistent with the policies embodied in relevant Supreme Court precedent and the policies implemented by Congress in BAPCPA. If, on the petition date, there is some value securing a claim, the valuation is implemented in a chapter 11 or a chapter 13 plan by providing plan treatment to the secured and unsecured portions of the claim. If there is no value securing a claim, the unsecured claim must be treated (and treatable) in a plan. That can no longer be done here because the Debtors' unsecured debts have been discharged in their prior chapter 7 cases. Thus, in the absence of any basis to implement the valuation by treating the resulting unsecured claim, § 506 may not be used to strip down or strip off a lien in a chapter 13 case for debtors who have recently obtained a chapter 7 discharge. The Court will enter separate orders in each of the seven cases consistent with this memorandum opinion.

# # #

**Copies furnished to:**

James Alan Poe, Esq.
James Alan Poe, P.A.

9500 S. Dadeland Blvd., Suite 610
Miami, Florida 33156

James Schwitalla, Esq.
The Bankruptcy Law Offices of James Schwitalla, P.A.
Park Place II
12954 S.W. 133 Court
Miami, Florida 33186

Larry M. Foyle, Esq.
Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A.
P.O. Box 800
Tampa, Florida 33601

Nancy N. Herkert, Esq.
Standing Chapter 13 Trustee
P.O. Box 279806
Miramar, Florida 33027